IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| CAROLYN LINDSEY-GROBES | * | |
| | * | |
| **Plaintiff,** | * | |
| v. | | **Case No.: GJH-14-00857** |
| | * | |
| UNITED AIRLINES, INC. | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This is a race discrimination case brought by Plaintiff Carolyn Lindsey-Grobes ("Plaintiff") against her employer, United Airlines, Inc. ("United"), for purported violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq*. This Memorandum Opinion and accompanying Order address United's Motion to Dismiss, ECF No. 9, as well as two motions to strike (ECF Nos. 10, 15) filed by United. The Court held a hearing on these motions on September 15, 2014. For the reasons stated below, United's Motion to is **GRANTED** and United's motions to strike are **GRANTED** as well.[1] The dismissal is with prejudice.[2]

---

[1] To be precise, the Court GRANTS ECF No. 10 in full and GRANTS ECF No. 15 in part. With respect to ECF No. 15, the Court will strike paragraphs 1 through 20 of the Lindsey-Grobes affidavit (ECF No. 13-2), which address Plaintiff's job performance and which were not included in the original complaint. The remaining paragraphs (21-32) will not be stricken. Accordingly, United's motion to strike will be denied with respect to these paragraphs.

[2] At the hearing on this matter, the Court indicated in the event of dismissal, leave to amend the complaint would likely be permitted. For the reasons stated below, however, the Court now

## I.     BACKGROUND

The events giving rise to this action occurred as a result of the historic blizzards that struck the Baltimore-Washington area in late 2009 and early 2010.   During such periods of inclement weather, United has a policy of providing certain eligible employees with company-issued hotel rooms close to the airport to ensure full staffing operations at the airport.   *See* ECF No. 1 at ¶ 5.   Plaintiff, a sales agent for United stationed at Baltimore-Washington International Airport, contends that United applied this policy discriminatorily by providing similarly situated white colleagues with their own rooms, while refusing to provide Plaintiff, an African-American, with her own room.   *Id.* at ¶ 6.   Plaintiff points to three allegedly discriminatory incidents to support her claim.   *Id.* at ¶¶ 8-18.   Additionally, Plaintiff contends that she was retaliated against when she reported this conduct.   *Id.* at ¶¶ 6, 22.

The first allegedly discriminatory incident occurred on Friday, December 18, 2009 – the day before a major blizzard struck the Baltimore-Washington area leaving nearly two feet of snow on the ground between Saturday, December 19, 2009 and Sunday, December 20, 2009.   *Id.* at ¶ 8.   On that Friday, December 18, 2009, Plaintiff returned to the Baltimore-Washington area from Houston where she had been attending a company event.   *Id.* at ¶ 9.   With a snowstorm in the forecast, Plaintiff called her supervisor from Reagan National Airport near Washington, D.C. to ask that she be provided a company-issued hotel room.   *Id.*   Plaintiff's supervisor, however, denied her request because Plaintiff was not scheduled to work the following day (Saturday) – the day on which the snow was forecast to hit.   *Id.*; *see also*   ECF No. 13-1 at ¶ 23 (acknowledging that "[she] could not get a room, as [she] was off Saturday").   As a result of her

---

finds that an amended complaint would be futile. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (holding that dismissal with prejudice was warranted where "amendment would be futile in light of the [complaint's] fundamental deficiencies").

supervisor's denial of Plaintiff's request to provide her with a hotel room, Plaintiff was forced to return home whereupon she became stranded for several days due to the massive amounts of snow that had accumulated. *See* ECF No. 1 at ¶ 11. During this time, Plaintiff was unable to attend work and received a negative mark on her attendance record as a result. *Id.* Plaintiff contends that the decision not to provide her with a company-issued hotel room was discriminatory because a white colleague was provided a company-issued hotel room on Saturday, December 19, 2009 and Sunday, December 20, 2009, despite the fact that this colleague was not scheduled to work on Sunday or Monday. *Id.* at ¶ 10. When Plaintiff asked one of her superiors why her white colleague was provided a company-issued hotel room when Plaintiff was not, she was told that it was because the colleague "was at work when the snow began."[3] *Id.* at ¶ 11.

The second incident of which Plaintiff complains arose a few weeks later shortly before another major blizzard hit the Baltimore-Washington area, which ultimately dumped another two feet of snow between Friday, February 5, 2010 and Saturday, February 6, 2010. *Id.* at ¶ 10. Sometime prior to February 5, 2010, and in anticipation of the predicted blizzard, Plaintiff once again asked her supervisor if she could be provided a company-issued hotel room. *Id.* Again, Plaintiff's supervisor denied her request because she was not scheduled to work on Friday, February 5, 2010 – the day on which the snow was forecast to fall. *Id.* Hoping not to miss any additional work due to the snow or to spend her own money on a hotel, Plaintiff elected to share a room with one of her African-American colleagues, who had been provided with her own company-issued hotel room. *Id.* at ¶ 13. Plaintiff has not alleged that she missed any shifts or

---

[3] As indicated above, Plaintiff was returning from business-related travel but was not at her job-site when she made the request.

overtime opportunities as a result of this second incident.  Again, Plaintiff contends that the decision not to provide her with a company-issued hotel room on February 5, 2010 was discriminatory because two white colleagues were provided a company-issued hotel room on Friday, February 5, 2010 and Saturday, February 6, 2010, despite the fact that they were not scheduled to work on Sunday or Monday.  *Id.* at ¶ 14.

The third and final incident of which Plaintiff complains arose a few days later when another foot of snow fell in the Baltimore-Washington area between Wednesday, February 10, 2010 and Thursday, February 11, 2010. *Id.* at ¶ 15.  On Thursday, February 11, 2010, Plaintiff's supervisor started calling his employees to inform them that United would be providing company-issued hotel rooms for Friday, February 12, 2010.  When Plaintiff asked her supervisor to be provided a hotel room for that night, her request was denied because Plaintiff was not scheduled to work that Friday.  *Id.* at ¶ 16.  Ultimately, however, Plaintiff worked on Friday and was provided a hotel room for that night.  *Id.* at ¶ 18.  Plaintiff contends that she was not paid overtime for that work.  *Id.*

At some unspecified point in time, Plaintiff reported the purported discrimination to United.  *Id.* at ¶¶ 6, 22.  Following her reporting of these events, Plaintiff contends that she was subjected to retaliatory monitoring of her performance, breaks and bidding on shifts, as well as negative performance reviews.  *Id.*

After filing charges against United for discrimination with the Equal Employment Opportunity Commission (EEOC), Plaintiff received a right to sue letter from the EEOC on January 31, 2014.  *Id.* at ¶ 23.  Accordingly, on March 20, 2014, Plaintiff filed the instant lawsuit against United for violations of Title VII of the Civil Rights Act of 1964 claiming that she was subjected to racially motivated disparate treatment as well as retaliatory acts for reporting the

alleged discrimination.  *See* ECF No. 1.  United has moved to dismiss Plaintiff's complaint.  *See* ECF No. 9.  For the reasons discussed below, the Court will grant United's motion and will dismiss Plaintiff's complaint with prejudice.

## II.    DISCUSSION

### A.    Motion to Strike

Prior to addressing United's Motion to Dismiss, the Court must address United's Motion to Strike Paragraph 23 of Plaintiff's Complaint as well as Exhibits 1 and 2 attached thereto.  *See* ECF No. 10.  Paragraph 23 states:

> Plaintiff filed charges with the Equal Employment Opportunity Commission (EEOC) who issued a Determination on July 31, 2013 that the Defendant's conduct violated 42 U.S.C. §§2000(e) (Title VII of the Civil Rights Act of 1964).  <u>See</u>: <u>Exhibit 1</u> [EEOC's Factual Determination].  Defendant refused to conciliate and Plaintiff received a right to sue letter from the EEOC on or about January 31, 2014 <u>See</u>: <u>Exhibit 2</u> [Notice of Failure to Conciliate].

United argues that this allegation and the related exhibits are "immaterial" (ECF No. 10-1 at 2) and should be stricken pursuant to Fed.R.Civ.P. 12(f), which permits "the court [to] strike from a pleading . . . redundant, immaterial, impertinent, or scandalous matter."  Fed.R.Civ.P. 12(f).  Plaintiff, on the other hand, contends that the allegations and exhibits are proper as they were included in the complaint "to plead and prove that (a) the administrative process has been exhausted when the Defendant failed to respond to the EEOC and (b) the Plaintiff timely filed her Complaint within ninety (90) days as required by law."  ECF No. 13-1 at 19.  The Court disagrees.

Paragraph 23 and the related exhibits go far beyond what is necessary for Plaintiff to satisfy the requirement that she plead that she exhausted her administrative remedies and that her complaint was timely filed in federal court.  Moreover, Paragraph 23's references to the EEOC's

findings and the Defendant's refusal to conciliate are not even relevant to these threshold issues

of exhaustion and timeliness.   Nor are they probative of the allegations in Plaintiff's complaint,

which are entitled to a *de novo* review by the District Court.   *See Chancey v. N. Am. Trade Sch.*,

No. 10-0032, 2010 WL 4781306, at *3 (D. Md. Nov. 17, 2010) (striking from complaint

references to "EEOC findings [as] 'immaterial to [Plaintiff's] causes of action" because

"[b]ecause federal district courts review discrimination claims *de novo*"), *aff'd sub nom.*

*Chancey v. N. Am. Trade Sch., Inc.*, 442 F. App'x 815 (4th Cir. 2011).   Accordingly, the Court

will grant United's Motion to Strike Paragraph 23, as well as Exhibits 1 and 2 attached to

Plaintiff's complaint. *See e.g.*, *Chancey*, No. 10-0032, 2010 WL 4781306, at *3 (plaintiff's

"inclusion of these prejudicial [EEOC] findings when he has demanded a jury trial and admits

that a juror might see the complaint may be an attempt to evade the Federal Rules of Evidence");

*Chapman v. Duke Energy Carolinas, LLC*, No. 09-37, 2009 WL 1652463, at *2 (W.D.N.C. June

11, 2009) (striking from complaint paragraphs discussing EEOC's findings that the plaintiff

"was retaliated against" and "subject to different terms and conditions" due to race); *Robinson v.*

*Hospitality Group Management, Inc.,* No. 09-35, 2009 WL 1383295, at *1 (W.D.N.C. May 14,

2009) (striking allegations in complaint containing EEOC's findings as "irrelevant" and

"prejudicial"); *Moss v. Lane Co.*, 50 F.R.D. 122 (W.D. Va. 1970) (striking as prejudicial

allegations concerning EEOC findings in the complaint).

    **B.**    **Motion to Dismiss**

        **1.**    **Standard of Review**

    Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it

"fails to state a claim upon which relief can be granted."   Fed.R.Civ.P. 12(b)(6).   This rule's

purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the

facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To that end, the Court bears in mind the requirements of Fed.R.Civ.P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

In an employment discrimination case such as this, "pleadings need not 'contain specific facts establishing a *prima facie* case of discrimination under the framework set forth' in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Westmoreland v. Prince George's Cnty.*, No. 09–2453, 2010 WL 3369169, at *3 (D. Md. Aug. 23, 2010) (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)). Such a requirement "would essentially create a 'heightened pleading standard' under which a plaintiff without direct evidence of discrimination would need to plead a *prima facie* case even though she might uncover direct evidence during discovery." *Id*. (quoting *Swierkiewicz*, 534 U.S. at 511–12). If this were the case, a plaintiff claiming employment discrimination would have "'to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.'" *Id*. (quoting *Swierkiewicz*, 534 U.S. at 512).

The Fourth Circuit "has not, however, interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." *Bass v. E.I. DuPont*

*de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim." (internal citation omitted)).   Thus, while a plaintiff pleading a claim of disparate treatment does not need to *establish* a *prima facie* case under *McDonnell Douglas* to survive a motion to dismiss, *Swierkiewicz,* 534 U.S. at 510, she must still plead facts sufficient to state each element of the asserted claim.   *See Bass*, 324 F.3d at 765 ("While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief.") (emphasis in original).

### 2.      Title VII Claims

Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).   Additionally, Title VII prohibits discrimination against an employee in retaliation for the employee's opposing the employer's illegal discrimination practices or participating in Title VII enforcement proceedings.   42 U.S.C. § 2000e–3(a).   Plaintiff contends that United violated these two sections of Title VII by (1) discriminatorily applying its inclement weather hotel policy by providing similarly situated white colleagues with hotel rooms, while refusing to provide Plaintiff with a room; and (2) by retaliating against Plaintiff when she reported this allegedly discriminatory conduct.

### a.        Disparate Treatment Claim

In order to state a prima facie claim of discrimination under Title VII, a plaintiff must plausibly allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

### i.        Protected Class

There is no dispute that Plaintiff, an African-American, has adequately alleged that she is a member of a protected class.  *See* ECF No. 1 at ¶ 6; *see also* ECF No. 9-1 at 5.

### ii.        Satisfactory Job Performance

The second element of a disparate treatment claim requires that Plaintiff plead facts to establish that "her job performance was satisfactory." *Coleman,* 626 F.3d at 190.  Plaintiff has done no such thing.  Nowhere in Plaintiff's complaint does she allege any facts to support the notion that her job performance was satisfactory.   Recognizing as much, "Plaintiff has provided, *in response to the present motion to dismiss*, a sworn affidavit [from Plaintiff] which exhaustively discusses the Plaintiff's adequate job performance up to, through and including the discrimination suffered at the hands of the Defendant."   ECF No. 13-1 at 15 (emphasis added). An affidavit attached to an opposition to a motion to dismiss, however, is no place for Plaintiff to add material facts to a deficient complaint.  Indeed, it is well-established that a plaintiff cannot amend his complaint by asserting new facts or exhibits in an opposition to a motion to dismiss. *See Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n. 4 (D. Md. 1997) (holding that facts contained in an opposition to a motion to dismiss but not within the complaint itself cannot be considered); *Brown v. Bank of America*, No. 10-1661, 2012 WL 380145, at *8 (D. Md. Feb 3,

2012) (declining to consider exhibits and additional facts in plaintiff's opposition brief); *Wilson v. Susquehanna Bancshares, Inc.*, No. 14-79, 2014 WL 2094039, at *3 (D. Md. May 19, 2014) ("it is well settled that the sufficiency of [plaintiff's] allegations is limited to the face of the Complaint"); *Hill v. Abercrombie & Fitch*, No. 11-00911, 2011 WL 4433573, at *4 n. 5 (D. Md. Sept. 20, 2011) (same).   Accordingly, the Court will not consider the portions of Plaintiff's affidavit that add new facts and effectively amend Plaintiff's complaint to reflect statements regarding Plaintiff's job performance.   As such, the Court will grant, in part, United's Motion to Strike Plaintiff's Affidavit Submitted in Opposition to United's Motion to Dismiss (ECF No. 13-2) by striking paragraphs 1 through 20 of the affidavit, which address Plaintiff's job performance and which were not included in the original complaint.   *See* ECF No. 15.[4]

In the alternative, Plaintiff invites the Court to infer from the complaint the adequacy of Plaintiff's job performance.   *See* ECF No. 13-1 at 15 (stating in opposition to United's motion to dismiss that "it can be inferred from the face of the Complaint alone that [Plaintiff] was performing adequately at her job").   Specifically, Plaintiff contends that the Court can infer from Plaintiff's complaint that she was performing her job adequately because it was not "until" she reported the alleged discrimination that Plaintiff was *first* accused of performance deficiencies. *See id.*   The allegation in the complaint upon which Plaintiff relies for this inference, however, is not that clear.   *See* ECF No. 1 at ¶ 22.

Paragraph 22 of the complaint states:   "When the Plaintiff complained of the disparate treatment she was accused of alleged performance based deficiencies spanning from January of 2010 through May of 2010 and through to the present time."   ECF No. 1 at ¶ 22.   Nothing about

---

[4] It should be noted that Plaintiff has not opposed United's Motion to Strike Plaintiff's Affidavit Submitted in Opposition to United's Motion to Dismiss.

this allegation states (or allows the Court to infer) that this was *the first time* Plaintiff had been accused of performance deficiencies.  Indeed, the complaint, as it currently is written, leaves adequate room for the possibility that Plaintiff had been accused of performance deficiencies previously.  Accordingly, the Court must decline Plaintiff's invitation to infer that she had been performing her job satisfactorily and find that she has failed to adequately allege this element of her claim.

### iii.  Adverse Employment Action

"An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'"  *Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 436 (D. Md. 2012) (quoting *Thorn v. Sebelius*, 766 F.Supp.2d 585, 598 (D. Md. 2011).  An "adverse employment action" must affect "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)).  "Although conduct short of ultimate employment decisions can constitute adverse employment action, there still must be a tangible effect on the terms and conditions of employment."  *Geist v. Gill/Kardash P'ship*, 671 F.Supp.2d 729, 737 n. 6 (D. Md. 2009).

Here, Plaintiff contends that she suffered an adverse employment action when, in the face of pending snow storms, United denied her requests for a company-issued hotel room, causing her to return home, whereupon she got snowed-in and missed several shifts of work.  *See* ECF No. 13-1 at 12-14.  The Fourth Circuit has recognized, however, that not every personnel decision that adversely affects the terms and conditions of employment constitutes an "adverse employment action" actionable under Title VII.  *See Page v. Bolger*, 645 F.2d 227, 233 (4th

Cir.1981) ("[T]here are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of . . . Title VII."). Rather, it is only those personnel decisions that affect "a significant change in [one's] employment status" that amount to an adverse employment action. *Hoyle*, 650 F.3d at 337. Thus, personnel decisions that result in a "mere inconvenience" do not constitute an adverse employment action, unless that inconvenience causes a significant change in employment status. *See Nichols v. Comcast Cablevision of Maryland*, 84 F. Supp. 2d 642, 659 (D. Md. 2000) ("[a] mere inconvenience without a significant change in employment status is insufficient"). While the Court certainly understands the frustrations Plaintiff endured as a result of United's decision to deny her request for a hotel room, that decision, at its core, amounted to nothing more than a mere inconvenience to Plaintiff.

Had Plaintiff wanted to ensure that she not miss any scheduled shifts, she could have made alternative arrangements for commuting to work. Indeed, that is exactly what Plaintiff did on at least one other occasion in early February 2010. *See* ECF No. 13-1 at 7. On that occasion, instead of returning home in the face of another blizzard, Plaintiff decided to share a company-issued hotel room with a fellow colleague who was eligible to receive a room. *Id.* As a result, Plaintiff did not miss any shifts or overtime opportunities on that occasion. *Id.* But that is not what Plaintiff did in December 2009; instead, Plaintiff elected to go home, whereupon she got snowed-in, and missed several shifts of work. While obviously unfortunate, Plaintiff cannot now transform these misfortunes into United's. *See Settle v. Baltimore Cnty.*, 34 F. Supp. 2d 969, 989 (D. Md. 1999) ("not everything that makes an employee unhappy is an actionable adverse action," as is the case here); *see also Allen v. Baltimore Cnty., Maryland*, No. 01-863, 2002 WL 32325675, at *3 (D. Md. Sept. 17, 2002) (a "plaintiff cannot establish a Title VII claim based

solely on disagreements with workplace decisions"). Accordingly, United's decision to deny Plaintiff's requests for a company-issued hotel room is not an adverse employment action for purposes of Title VII. Although Plaintiff tries to argue that her lost shifts, which ultimately included overtime opportunities, caused a significant change to her employment status, the Court is not persuaded.

First, Plaintiff concedes that, at the time United denied her requests for a hotel room, she was not even scheduled to work overtime. *See* ECF No. 13-1 at 14. Indeed, Plaintiff acknowledges that, at that time, there was only a "possibility" that she would have even had the opportunity to work overtime. *Id.* And that it was only after "other agents . . . could not make it in [to work] due to the weather" that that possibility materialized. *Id.* Thus, at the time United denied Plaintiff's request, Plaintiff's claimed entitlement to overtime wages was based entirely on speculation. Such speculation cannot form the basis of an adverse employment action under these circumstances. *See e.g.*, *Roney v. Illinois Dep't of Transp.*, 376 F. Supp. 2d 857, 867 (N.D. Ill. 2005) (no adverse employment action where "allegations of being denied overtime hours are vague and based on speculation"), *aff'd*, 474 F.3d 455 (7th Cir. 2007); *Swain v. City of Vineland*, 457 F. App'x 107, 111 (3d Cir. 2012) ("a speculative increase in potential overtime does not qualify as a change in the terms or conditions of employment, particularly where one's current position, as here, offers its own opportunities to earn overtime"); *Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996) (holding that an adverse employment action does not include an employer's denial of overtime where such benefit was purely discretionary and not automatically entitled).

Second, even if Plaintiff's overtime opportunities had been guaranteed (and they were not), the loss of those few opportunities did not affect a *significant* change to her employment

status.  *See e.g.*, *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94-95 (1st Cir. 2012) (no adverse employment action where plaintiff's claim "is based on the purported loss of three shifts during the weeks encompassing Labor Day, Thanksgiving, and Christmas" because that "reduction simply does not rise to the level of an adverse employment action in the context of a workplace where schedules fluctuate"); *Embry v. Callahan Eye Found. Hosp.*, 147 Fed. App'x. 819, 829 (11th Cir. 2005) (holding that an employee's one-day suspension resulting in a loss of $88.73 did not constitute "a serious and material change in the terms, conditions, or privileges of employment"); *Allen v. St. Cabrini Nursing Home, Inc.,* 198 F. Supp. 2d 442, 449 (S.D.N.Y. 2002) (denial of opportunity to work one day's worth of overtime not an adverse employment action where plaintiff had other opportunities to earn overtime pay); *Rivers v. Potter*, No. 05-4868, 2007 WL 4440880, at *7 (D. N.J. 2007) (determining that the denial of a single instance of overtime work did not constitute an adverse employment action that impacts the terms, conditions, or privileges of employment).

Furthermore, nowhere in Plaintiff's complaint does she allege that the loss of these overtime opportunities affected her employment status in any material way.[5]  To be certain, Plaintiff does not claim that she was demoted, fired, or suspended as a result of the missed overtime. Nor does she claim that she lost any opportunities for promotion as a result.  *See Lyle v. County of Fairfax Va.*, No. 05-1134, 2006 U.S. App. LEXIS 6025 (4th Cir. Mar. 10, 2006) (no adverse employment action where denial of overtime opportunities did not "inhibit [plaintiff's] opportunities for promotion and professional development and thereby affect her

---

[5] Although Plaintiff contends she was given an "attendance point" as a result of her missed shifts, Plaintiff does not allege how, if at all, this mark impacted her job status or job opportunities.  *See* ECF No. 1 at ¶ 11.

compensation"); *Henry v. NYC Health & Hosp. Corp.*, No. 13-6909, 2014 WL 957074 (S.D. N.Y. Mar. 10, 2014) (no adverse employment decision where plaintiff "fails to allege facts plausibly indicating that she suffered any material detriment as a result of being denied overtime, such as opportunities for career advancement"). Under these circumstances, the Court cannot say that Plaintiff's lost opportunity to work potential overtime shifts was an "adverse employment action" under Title VII.[6]

### iv.  Similarly Situated Employees

Finally, Plaintiff has failed to plead facts sufficient to demonstrate that Plaintiff was treated differently from similarly situated white employees. Although courts do not always require comparator evidence, a plaintiff who bases her allegations entirely upon a comparison to an employee from a non-protected class, like here, "must demonstrate that the comparator was 'similarly situated' in all relevant respects." *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 (D. Md. 2013) *aff'd*, 13-1777, 2014 WL 2809027 (4th Cir. June 23, 2014). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of

---

[6] Plaintiff's extensive and exclusive reliance on *Johnson v. Baltimore City Police Dept.*, No. 12-2519, 2014 WL 1281602 (D. Md. Mar. 27, 2014) is unavailing. *See* ECF No. 13-1 at 13-14. In *Johnson*, the Court determined that a "*medical suspension*" that caused the plaintiff to lose "significant income, due to lost overtime and secondary employment opportunities" was sufficient to establish an "adverse employment action" at the pleading stage. *Id.* at 19 (emphasis added). Thus, in *Johnson*, *but for* the employer's decision to *suspend* the plaintiff, she would have otherwise earned overtime compensation. *Id.* That is not what happened here. In this case, United's denial of Plaintiff's requests for a company-issued hotel room did not cause Plaintiff to lose potential overtime shifts; Mother Nature did. That is, Plaintiff's lost overtime opportunities were caused by her decision to return to her home in Prince George's County and the subsequent snowfall that made it impossible for Plaintiff to travel to work. *See* ECF No. 13-1 at 6 (Plaintiff's opposition recognizing that "[t]he snow was so high, walking out to public transportation that was either not running or running sporadically was not an option.").

them for it.'" *Haywood v. Locke,* 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir. 1992)); *see also Humphries v. CBOCS W., Inc.,* 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel . . . ."), *aff'd,* 553 U.S. 442 (2008). Plaintiff does not challenge United's claim that she must allege comparator evidence. Instead, she avers that her allegations are sufficient.

First, with respect to the Friday, December 18, 2009 incident, Plaintiff contends that she called her supervisor that day to ask that she be provided a company-issued hotel room. Her request, however, was denied because she was not scheduled to work that Saturday, December 19, 2009. See ECF No. 13-2 at ¶ 23 (acknowledging that "[she] could not get a room, as [she] was off Saturday"). Plaintiff contends that the decision to not provide her a company-issued hotel room that Saturday night was discriminatory because a white colleague was provided a room for that same night. As Plaintiff concedes, however, the white colleague, unlike Plaintiff, worked that Saturday, December 19, 2009 – the day the snowfall started. Accordingly, Plaintiff was not similarly situated to that employee.

The same is true as it pertains to the second purported act of discrimination that occurred around February 5, 2010. Specifically, Plaintiff contends that on some day prior to the start of the blizzard on Friday, February 5, 2010, her supervisor asked agents who would be needing a hotel room for that Friday night. Although Plaintiff requested a room for that night, her request was denied because she was not scheduled to work on that Friday, February, 5, 2010. Plaintiff contends that United's decision not to provide her with a company-issued hotel room that Friday night was discriminatory because two white colleagues were provided a room that night. Again, however, it is evident from Plaintiff's complaint that the two white agents who were provided

with a company-issued hotel room that night were scheduled to work that Friday, February 5, 2010 – the day the blizzard started.  As such, Plaintiff, who was not scheduled to work that Friday, was not similarly situated to the two white agents, who were scheduled to work that day.[7]

Plaintiff has therefore failed to adequately allege facts sufficient to support a disparate treatment claim.  The Court will grant United's Motion to Dismiss this claim.

### b.    Retaliation

Although not clearly stated in her complaint, Plaintiff appears to attempt to state a retaliation claim under Title VII.  *See* ECF No. 1 at ¶¶ 6, 24.  Title VII prohibits discrimination against an employee in retaliation for the employee's opposing the employer's illegal discrimination practices or participating in Title VII enforcement proceedings.  42 U.S.C. § 2000e–3(a).  To properly plead retaliation, a plaintiff must allege "(1) that she engaged in protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998).  Plaintiff has failed to satisfy this pleading burden.

### i.    Protected Activity

The first element of a retaliation claim requires a plaintiff to plead that she engaged in protected activity.  *Id.*  Opposition to an employer's policies by formal or informal complaints

---

[7] It ought to be noted that during the second blizzard, one of Plaintiff's African-American colleagues was provided with her own company-issued hotel room.  The fact that this colleague ultimately decided to share her room with Plaintiff does not suggest that Plaintiff and her African-American colleague were somehow forced to room together, while their white colleagues were each provided their own rooms.  *See* ECF No. 1 at ¶ 13 (alleging that Plaintiff's "[c]o-worker, Bernadette Telesford, offered to share her room with [Plaintiff]").  To the contrary, it suggests that United administered its inclement weather hotel policy in a race-neutral fashion.  Furthermore, Plaintiff acknowledges that on prior occasions "she had [] been provided hotel rooms prior to scheduled shifts when a storm was impending."  ECF No. 13-1 at 5.

qualifies as protected activity. *See id.* at 259 ("Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."); *see also Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011) (recognizing that "protected activity" for a retaliation claim includes the "filing a complaint with the EEOC").   Here, Plaintiff has adequately alleged that she engaged in "protected activity" by (1) informally complaining to United of the purportedly discriminatory conduct and (2) by filing formal discrimination charges with the EEOC.   *See* ECF No. ¶ ¶ 6, 24.

### ii.      Adverse Employment Action

The second element of a retaliation claim requires Plaintiff to plead that an adverse employment action was taken against her. *See Laughlin*, 149 F.3d at 258.  The adverse action element of a retaliation claim is different from that of a disparate treatment claim.  Whereas for a disparate treatment claim, "[a]n adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of a plaintiff's employment," *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007), for a retaliation claim, a plaintiff need only allege that she suffered an action that was "materially adverse," meaning that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Thus, "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64.  However, the discriminatory actions must still "produce[] an injury or harm." *Id.* at 67.   Indeed, the standard of material adversity is important because Title VII does not protect employees from "trivial harms" such as "petty slights" and "minor annoyances." *Id.* at 68.

Courts have recognized that "[e]ven with the lower bar [set by the Supreme Court in *Burlington*], none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee 'AWOL'; or issuing a personal improvement plan, 'an "Attendance Warning," 'a verbal reprimand, 'a formal letter of reprimand,' or 'a proposed termination.'" *Muldrow v. Blank*, No. 13-1200, 2014 WL 938475, at *10 (D. Md. Mar. 10, 2014) (quoting *Rock v. McHugh*, 819 F.Supp.2d 456, 470–71 (D. Md.2011). Here, the allegedly adverse employment actions of which Plaintiff complains include "monitoring of her performance, breaks and bidding on shifts" (ECF No. 1 at ¶ 6) as well as accusations of "performance based deficiencies" (*id.* at ¶ 26). Although neither of these actions falls squarely within *Muldrow*'s non-exhaustive list of adverse employment actions in the retaliation context, the Court finds that, based on the allegations in the complaint, neither of these alleged actions is sufficient to establish an adverse employment action.

First, Plaintiff alleges that when she "complained about the disparate treatment, she was subject to retaliatory monitoring of her performance, breaks and bidding on shifts." *Id.* at ¶ 6. Plaintiff's allegation that she was "subject to retaliatory monitoring" are, at most, "petty slights, minor annoyances, and simple lack of good manners," *see Burlington*, 126 S.Ct. at 2415, that cannot be classified as materially adverse employment actions. *See e.g.*, *Livingston v. Datex-Ohmeda, Inc.*, No. 05-3401, 2008 WL 7289608, at *3 (D. Md. May 7, 2008) (plaintiff's "complaints that she was singled out and strictly monitored and that her time sheets were scrutinized, are, at most, 'petty slights, minor annoyances, and simple lack of good manners,' that cannot be classified as materially adverse employment actions") (internal citation omitted), *aff'd sub nom. Livingston v. Gen. Elec. Co.*, 316 F. App'x 233 (4th Cir. 2009); *Nigro v. Virginia*

*Commonwealth Univ. Med. Coll. of Virgin*ia, No. 09-00064, 2010 WL 2262539, at *10-11 (W.D. Va. June 4, 2010) (plaintiff's allegations of "excessive monitoring" are "insufficient at [the pleading] stage to state a claim for retaliation"), *aff'd sub nom. Nigro v. Virginia Commonwealth Univ./Med. Coll. of Virginia*, 492 F. App'x 347 (4th Cir. 2012); *Shannon v. Va. Dep't of Juvenile Justice*, No. 06-413, 2007 WL 1071973, at *4 (E.D. Va. 2007) (concluding that supervisor's acts of questioning employee's leave requests and monitoring employee's activities do not cross the "materially adverse" threshold); *Pannell v. Nicholson*, No. 06-00088, 2008 WL 565098, at *5 (W.D. Va. Feb. 29, 2008) (employee monitoring "was not an adverse employment action, as contemplated by *Burlington Northern*").   Indeed, nothing in Plaintiff's complaint suggests that any of the alleged monitoring activities caused Plaintiff any injury or harm.   To be certain, Plaintiff does not allege that she was denied a promotion, lost pay, or otherwise had her work schedule, duties, or benefits modified as a result of the alleged monitoring.   At most, Plaintiff's complaint describes increased tension or minor annoyances at the work place; but, increased tension or unpleasant personal relationships, without concomitant injury or harm, "do not rise to the level of actionable retaliatory adverse action."   *Chika v. Planning Research Corp.*, 179 F. Supp. 2d 575, 587 (D. Md. 2002).

Nor has Plaintiff alleged any facts that would allow the Court to conclude that the poor performance reviews she allegedly received caused any "injury or harm" as required by *Burlington*.   Plaintiff's complaint includes only one broad sentence relating to her performance reviews.   *See* ECF No. 1 at ¶ 26.   That sentence states generally that "[w]hen [Plaintiff] complained of the disparate treatment[,] she was accused of alleged performance based deficiencies spanning from January of 2010 through May of 2010 and through to the present time."   ECF No. 1 at ¶ 26.   Without more, this allegation is insufficient to constitute a materially

adverse employment action.  The Court cannot discern from this allegation what, if any, harm or injury, Plaintiff suffered as a result of her negative performance review.  *See e.g.*, *Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (concluding that "even under the *Burlington* standard, [plaintiff] is unable to establish a prima facie case of retaliation with respect to . . . her May 2002 performance evaluation" as she did not show that it "would have dissuaded a reasonable worker from making or supporting a charge of discrimination") (internal quotations omitted); *Toulan v. DAP Products, Inc.*, No. 05-2254, 2007 WL 172522, at *9 (D. Md. Jan. 17, 2007) *aff'd sub nom. Toulan v. DAP, Inc.*, 271 F. App'x 312 (4th Cir. 2008) ("Even under the relaxed *Burlington Northern* standard, [plaintiff's] 2005 [poor performance review] does not constitute a materially adverse employment action."); *Simmington v. Gates,* No. 08-3169, 2010 WL 1346462, at *13 (D. Md. Mar. 30, 2010) ("Defendant's actions of giving Plaintiff a letter of expectation and an "Unacceptable" rating were not materially adverse actions.").  Because Plaintiff's complaint is devoid of even a single allegation of harm or injury relating to the increased monitoring or negative performance reviews, Plaintiff has failed to plead facts sufficient to establish that the complained of conduct "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68.

### iii.   Causal Connection

Even assuming the negative performance reviews and the increased monitoring constituted adverse employment actions, Plaintiff has not pled facts sufficient to establish "a causal link between the protected activity and the adverse employment action." *Laughlin,* 149 F.3d at 258.  Specifically, Plaintiff has not alleged any facts to indicate who she reported the alleged disparate treatment to, or when she reported it.  Additionally, Plaintiff has not alleged any facts to indicate who from United was involved in the monitoring of her performance,

breaks, and shift-bidding.  Nor does she allege when the monitoring or reviews occurred or any other details surrounding these alleged occurrences.  Without this information, the Court is unable to draw a reasonable inference that establishes a causal connection between Plaintiff's act of reporting the disparate treatment and the increased monitoring and negative performance reviews she allegedly received.  *See Davenport v. Maryland*, No. 13-1249, 2014 WL 3887932, at *7 (D. Md. Aug. 6, 2014) (granting motion to dismiss retaliation claim where plaintiff's complaint failed to "identify the person or persons who committed these retaliatory acts"); *see also Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (finding that the plaintiff could not show that the retaliation was causally related to her complaint of discrimination because she could not identify who committed the retaliatory acts); *Caldwell v. Jackson*, No. 03-707, 2009 WL 2487850, at *9 (M.D. N.C. Aug.11, 2009) ("[Defendant] cannot make out a prima facie case of retaliation based on acts by anonymous persons."), *report and recommendation adopted*, 831 F.Supp.2d 911 (M.D. N.C.2010).  Plaintiff has therefore failed to adequately allege facts sufficient to support a retaliation claim.

## III.    CONCLUSION

For the aforementioned reasons, Defendant United's Motion to Dismiss is GRANTED. The Court will therefore DISMISS Plaintiff's complaint WITH PREJUDICE.


Dated: <u>October 14, 2014</u>                                    <u>        /S/                        </u>
                                                                                                  George Jarrod Hazel
                                                                                                  United States District Judge